IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD FOSTER,

      Plaintiff,                              No. CIV S-04-2557 RRB EFB P

    vs.

M.D. DCDONALD, et al.,

      Defendants.                      <u>FINDINGS & RECOMMENDATIONS</u>

        Plaintiff is a state prisoner without counsel suing under 42 U.S.C. § 1983. This action is proceeding on the amended complaint filed April 22, 2005. Pending before the court is plaintiff's motion for summary judgment, filed July 18, 2006, and defendants' cross-motion for summary judgment, filed August 11, 2006. After carefully reviewing the record, the court recommends that plaintiff's motion be denied, and defendants' motion be granted in part and denied in part.

**I.    Background**

        Plaintiff was previously incarcerated at Pelican Bay State Prison, where he was assigned to single cell status in 1999 "due to safety concerns and numerous cell fights." *See* "Separate Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment" ("Pl.'s SUF"), Ex. C, at 2. At various times during his incarceration at Pelican Bay, plaintiff was placed

1

in Administrative Segregation ("Ad Seg") for incidents of battery involving other inmates. *See* Pl.'s SUF, Ex. C, at 4, 6. Prison records indicate plaintiff's affiliation with the "Neighborhood Crips" gang.[1] *Id.*, at 1, 7, 8. Plaintiff alleges that he renounced his affiliation with this gang, which placed him in danger and furthered his need for single cell housing. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pl.'s Br."), at 2-3. Defendants have submitted evidence disputing that plaintiff is an *ex*-gang member and indicating that he is actively affiliated with the Neighborhood Crips. *See* Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment ("Defs.' SUF"), at ¶ 24, Ex. B, Attach. 8.

Plaintiff was transferred to High Desert State Prison on June 3, 2000. *See* Pl.'s SUF, Ex. C, at 8. At High Desert, plaintiff was placed in single cell housing due to "in-cell violence." *Id.*, at 9. At various times during his incarceration at High Desert, plaintiff was placed in Ad Seg for, among other things, attempted battery on a peace officer. *Id.*, at 11, 14. On November 20, 2003, plaintiff was removed from single cell status after a committee determined he no longer qualified for that status. *Id.*, at 4. Defendant McDonald was the chairperson of the committee that made this determination. *Id.*

Plaintiff alleges that defendant McDonald, Associate Warden at High Desert State Prison, violated his constitutional rights by removing him from single cell status on November 20, 2003. Plaintiff states that the Institutional Classification Committee ("ICC") and McDonald's decision to remove him from single cell status denied him equal protection under the regulations in the "prison operations manual." *See* Amended Complaint, at 4. Plaintiff also alleges that defendants violated his constitutional rights by taking his appliances (television, cassette player, headphones, and headphones extension cord) and demanding that he send those items home. *Id.*

---

[1] As discussed herein, the parties dispute whether plaintiff continues to be affiliated with this, or other gangs or "disruptive groups."

1  Specifically, plaintiff alleges that defendants violated his due process rights by illegally
2  confiscating his property. *Id*. Plaintiff's property was confiscated pursuant to Operational
3  Procedure 606 – a policy local to High Desert. This procedure governs the confiscation of
4  inmates' "appliances" for refusal to double cell. Plaintiff alleges that at the time of confiscation
5  and throughout the appeals process, the procedure did not conform with Department property
6  policies. Indeed, defendants acknowledge that the procedure did not conform with property
7  policies of the Department of Corrections when plaintiff's appeal was reviewed at the third level
8  in 2004. *See* Defs.' SUF, at ¶¶ 13, 23. The procedure is now in compliance and operates as a
9  pilot program approved by the Department of Corrections and Rehabilitation. *Id.*

10 **II.     Summary Judgment**

11        Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases
12 with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of*
13 *Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a
14 sufficient disagreement to require submission to a jury or whether it is so one-sided that one
15 party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52
16 (1986). Two steps are necessary. First, according to the substantive law, the court must
17 determine what facts are material. Second, in light of the appropriate standard of proof, the court
18 must determine whether material factual disputes require resolution at trial. *Id.* at 248.

19        When the opposing party has the burden of proof on a dispositive issue at trial, the
20 moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v.*
21 *National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters
22 which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477
23 U.S. 317, 323-24 (1986).

24        If the moving party meets its burden, the burden shifts to the opposing party to establish
25 genuine material factual issues. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
26 ////

3

574, 586 (1986).² The opposing party must demonstrate that disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial. *Id.*, at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present *evidence* of specific disputed facts. *See Anderson*, 477 U.S. at 248.³ Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court should grant summary judgment.

////

---

² The nonmoving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted). A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

³ A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (*per curiam*).

### A.    Equal Protection Claims

Plaintiff seeks to bring his claims regarding his alleged improper removal from single cell status under the equal protection clauses of the Fifth and Fourteenth Amendments. *See* Amended Complaint, at 4. Defendants have not moved to dismiss such a claim, but rather have chosen to interpret plaintiff's allegations as stating a claim under the Eighth Amendment. Indeed, plaintiff's allegations are more appropriately considered under that Amendment, and consistent with this Circuit's liberal construction of pro se pleadings, the court construes them as such. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). However, to the extent plaintiff did in fact mean to assert an equal protection claim, he fails to do so. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim for the violation of equal protection, plaintiff must allege defendant intentionally discriminated against him based upon membership in a protected class."). Plaintiff has made no such allegation, and even if he had, it appears immaterial to the heart of his grievance.

### B.    Eighth Amendment Claims

Much of defendants' brief in support of their cross-motion for summary judgment addresses plaintiff's purported Eighth Amendment claim for removal of his single cell status and the resultant loss of good time credit for his refusal to double cell. Defendants argue that if plaintiff is successful in proving that he cannot be safely double celled and that it was a violation of his Eighth Amendment rights to revoke his single cell status, disciplinary reports regarding his refusal to double cell would be voided. This would result in retroactively removing him from zero earning status. Because this would result in a recalculation of plaintiff's release date, defendants argue that his sole remedy is a habeas corpus action.

Defendants' argument on this point is misplaced. Plaintiff raises no claim regarding revocation of good time credits or the resultant effect on his release date. In fact, his opposition brief expressly disavows that he seeks such relief. *See* Pl.'s Opp'n to Defs.' Cross-Mot. for Summ. J. ("Opp'n"), at 3. Plaintiff's only mention of loss of good time credits appears in his

5

declaration in support of his motion for summary judgment. *See* Declaration of Ronald Foster in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Dec."), at ¶¶ 22-23. Further, the merits of this case have yet to be determined. The possibility that plaintiff may prevail, which would result in a recalculation of his good time credits, is not an appropriate basis for granting defendants' summary judgment in the case's present posture.

In any event, plaintiff's allegations do suggest a "deliberate indifference" claim under the Eighth Amendment for defendant McDonald's role in removing plaintiff from single cell status. Setting aside plaintiff's failed apparent attempt to assert an equal protection claim, the crux of plaintiff's complaint is that McDonald "deliberately disregard[ed] the risk to [plaintiff's] health and safety" when the committee decided plaintiff should be double celled. *See* First Amended Complaint, at 4; Pl.'s Br., at 5. This claim is most appropriately analyzed under the Eighth Amendment.

The Eighth Amendment requires that the conditions of a prisoner's confinement, even if harsh, have some legitimate penological purpose. *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment if they are deliberately indifferent to a risk of harm at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To be deliberately indifferent, a prison official must know of, or infer from the circumstances, a risk of harm or injury that "is not one that today's society chooses to tolerate," yet fail to take reasonable actions to mitigate or eliminate that risk. *Farmer*, 511 U.S. at 837; *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff asserts that he was assigned to single cell status "due to safety concerns and numerous cell fights, in part, in relation to [his] decision to renounce [his] gang affiliation."

1  Amended Complaint, at 3.  The parties dispute whether or not plaintiff did in fact renounce his
2  gang affiliation.  Defendants present evidence indicating that plaintiff is still affiliated with the
3  Neighborhood Crips.  *See* Defs.' SUF, at ¶ 24, Ex. B, Attach. 8.  However, regardless of
4  plaintiff's present affiliation (or non-affiliation) with a gang, defendant's safety concerns are not
5  solely premised on his alleged status as an ex-gang member.  Rather, plaintiff cites generally to
6  "safety concerns" and the prison records produced by both parties indicate that plaintiff has a
7  documented history of violent encounters with other inmates.  Plaintiff's placement on single cell
8  status, both at Pelican Bay and High Desert was due to "violence."

9      At Pelican Bay, plaintiff was assigned to single cell status "due to safety concerns and
10  numerous cell fights."  *See* Pl.'s SUF, Ex. C, at 2.  The comments in the classification chrono for
11  plaintiff's annual review at High Desert in 2001, indicate that he was "single cell housing
12  assigned due to two in cell violence."  *Id.*, at 8.  The classification chrono from plaintiff's
13  program review on August 14, 2001, provides that plaintiff "is single cell housing assigned due to
14  in-cell violence."  *Id.*, at 9.

15      While plaintiff does not appear to be wholly blameless for all such violent encounters,
16  some of the records he presents show that he was a victim on at least one occasion and that the
17  committee acknowledged he had enemies.  *See* Pl.'s SUF, at Ex. B; *Id.*, at Ex. C, at 4, 7.  Other
18  records show plaintiff was at times the aggressor, while other records refer vaguely to incidents of
19  in-cell violence as a justification for single-cell status.  *See e.g., Id.*, Ex. C, at 3, 8, 9. Although
20  there may be policy considerations in not rewarding an inmate's own acts of violence on prior
21  cellmates with his own private accommodations, the evidence may be construed as pointing to
22  legitimate concerns regarding plaintiff's safety.

23      On November 20, 2003, the classification committee determined that plaintiff no longer
24  met the criteria for continued single cell housing.  *See* Defs.' SUF, Ex. B, Attach. 4.  This raises
25  the obvious question of what changed as to the concern for plaintiff's prior involvement with in-
26  cell violence.  The classification chrono shows no indication that plaintiff raised safety concerns

7

at that hearing due to his alleged former gang affiliation or otherwise. *Id.* Rather, that document shows plaintiff's only comment to be that he "would prefer not to have a cellmate because he felt he was not ready to deal with living with another inmate." *Id.* In his declaration, defendant McDonald avers that plaintiff's disciplinary history was carefully reviewed, and all of his other case factors were considered in determining that plaintiff did not meet the criteria for single cell status. *See* Declaration of M. McDonald ("McDonald Dec."), Defs.' SUF, Ex. B at ¶ 11. Defendant McDonald also declares that plaintiff's CDC form 812 (indicating plaintiff's affiliation with a gang) was reviewed before revoking plaintiff's single cell status. *Id.*, at ¶ 13.

Plaintiff's appeal of the reclassification was denied. *See* Defs.' SUF, Ex. B, Attach. 7. That decision denying plaintiff's appeal states that a "review of the file indicates that . . . [plaintiff has] no pattern of assault behavior towards cell partners, history of in-cell sex abuse, predatory behavior towards cell partners, or potential for victimization." *Id.* At the second level of review, plaintiff's appeal was also denied. That denial states that plaintiff had "only one incident involving in-cell violence which was a mutual combat that occurred in the cell on February 9, 1996." *Id.*

Although there appears to be some confusion regarding the number of times plaintiff had incidents of in-cell violence, it is clear that plaintiff had at least one such incident, and that plaintiff maintained a single cell status for a number of years for that reason and general concerns for his safety. Nonetheless, in 2003, the classification committee determined that plaintiff no longer met the criteria for continued single cell status. Plaintiff maintains that defendant McDonald knew about the safety concerns that had caused plaintiff to be single cell housed over the years. However characterized, the earlier safety concerns causing the single cell housing were known to the committee. Indeed, defendant McDonald seems to confirm such an awareness by averring that the committee reviewed plaintiff's disciplinary history prior to reclassifying plaintiff. McDonald Dec., at ¶¶ 11, 13. Thus, the relevant inquiry concerning plaintiff's Eighth Amendment claims is whether or not defendant McDonald "disregarded an excessive risk to

8

plaintiff's health and safety." *Farmer*, 511 U.S. at 837.

Here, plaintiff has not presented any evidence pointing to a *specific* or excessive risk of harm, but he has presented evidence that prison officials had previously and consistently found he met the requirements to be assigned single cell status. Even so, such evidence is insufficient for a grant of summary judgment in his favor on this issue. The fact that there is some dispute regarding the number of times plaintiff was involved with "in cell violence" points to some dispute concerning the level of risk – if any – plaintiff faced by being double celled. Indeed, defendants, as the moving party in their cross-motion, have not demonstrated the absence of such a risk. Quite tellingly, defendants state in their opposition to plaintiff's motion that "*there [are] reasonable disputes of fact concerning whether there was any risk to plaintiff's safety when he was removed from single cell status*." Opp'n, at 6:27-28 (emphasis added). The risk of harm must be "substantial" to state a claim under the Eighth Amendment; therefore, the level of risk is a material issue for such a claim. Because there is an *admitted* dispute regarding the level of risk to plaintiff and this disputed fact appears to be material, summary judgment is not appropriate.

The court notes that the defendants have not addressed the question of whether plaintiff's own misconduct by his acts of violence on a prior cell mate alters the analysis under the Eighth Amendment. At some point, plaintiff must be accountable for conditions that he, himself, creates. Morever, there would appear to be compelling penological purposes for not providing an incentive for misconduct by rewarding an inmate's acts of violence by granting his request for private cell accommodations. Nonetheless, defendants' motion has not addressed this question.

Because of the admitted dispute over a material issue of fact, the court recommends that both plaintiff's and defendants' motions for summary judgment on this claim be denied.

**C.     Due Process Claims**

Plaintiff alleges that defendants St. Andre and Davey violated his due process rights by confiscating his "appliances" pursuant to Operational Procedure 606, which provides for confiscation of inmates' appliances for refusal to double cell. *See* Defs.' SUF, Ex. B, Attach. 5.

When plaintiff's property was confiscated, operational procedure 606 – a policy local to High Desert – was "not in conformance with Departmental property policies." McDonald Dec., at ¶ 19.

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

While plaintiff alleges that the confiscation of his property was intentional, his allegations indicate that the confiscations were not authorized. Specifically, he alleges that defendants Davey and St. Andre had no authority to confiscate his property pursuant to Operational Procedure 606, because that procedure was not then in compliance with departmental regulations. Defendants admit this, and point to the fact that the procedure is now in compliance because it operates as a pilot program approved by the Department of Corrections and Rehabilitation. McDonald Dec., at ¶ 19. Thus, while the current practices appear to conform to controlling regulations, there appears to be no dispute that the confiscation of plaintiff's property was not authorized. However, under *Hudson*, the due process analysis hinges on whether there is an adequate post-deprivation process to remedy the unauthorized act.

The California Legislature has provided a remedy for tort claims against public officials in the California Gov't Code, §§ 900, *et seq*. Because a meaningful postdeprivation remedy is available, plaintiff's claim alleging the unauthorized deprivation of his property in violation of his right to due process must fail. No genuine material factual issue has been raised on this point and

defendants' motion for summary judgment as to this claim must be granted as a matter of law.

## III.   Conclusion

In accordance with the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be DENIED; and

2. Defendants' motion for summary judgment be GRANTED as to the due process claims against defendants Davey and St. Andre, but denied as to the Eighth Amendment claim against defendant McDonald.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 2, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE